VICTOR KOPPONEN v. BENJAMIN FINCH AND JAMES B. FINCH, CO-PARTNERS AS FINCH BROTHERS.[1]

July 20, 1923.

No. 23,462.

No practical construction by conduct on contract to cut pulpwood.

1. Under the circumstances detailed in the opinion and especially in the absence of a request therefor, defendants were not entitled to an instruction that the jury might find that the parties, by their conduct, had placed a practical construction upon the terms of their contract with respect to the measurement of wood plaintiff had furnished to defendants.

Measurement of pulpwood cut under contract.

2. The wording of the contract warranted the jury in finding that the quantity of wood was to be ascertained by scaling or measuring it at the place where plaintiff delivered it to defendants.

Allowance for shrinkage after loading on cars.

3. The evidence warranted the jury in finding that an allowance should be made for shrinkage after the wood was loaded in cars and supports their verdict as to the amount due plaintiff after making such an allowance.

Action in the district court for St. Louis county to recover $3,-850.89 balance due on contract for cutting pulpwood. The case was tried before Magney, J., who when plaintiff rested denied his

[1]Reported in 194 N. W. 718.

motion for a directed verdict in his favor, and a jury which returned a verdict for $3,073.09. From orders denying their motions for a new trial, defendants appealed. Affirmed.

*Warner E. Whipple,* for appellants.

*Boyle & Montague,* for respondent.

LEES, C.

Action to recover the balance due on a contract for the cutting of pulpwood. Plaintiff recovered a verdict and defendants appealed from an order denying a new trial.

The contract was executed November 16, 1920, and was modified a week later by increasing the price to be paid for each cord of wood. Plaintiff claimed $3,850.89 in his complaint. Defendants admitted that they owed him $2,416.89. The difference was due to a controversy over the measurement of the wood. Delivery was made at Forsman, the railroad station from which the wood was shipped by defendants to the International Lumber Company of International Falls. The wood involved in this litigation was scaled by plaintiff's son Martin as it was loaded on the cars at Forsman, and by the scalers of the lumber company at International Falls when it was unloaded. According to the first scale there were 2,372⅝ cords, and according to the second 2,238¼ cords. The price to be paid was $8 a cord. After the evidence was in, plaintiff reduced his claim to $3,494.97 if nothing was allowed for shrinkage of the wood while in transit, and to $2,962.97 if shrinkage was allowed. Defendants stood by their answer, but conceded that plaintiff was entitled to interest on the sum found to be due him, and the court instructed the jury accordingly. A verdict for $3,-073.09 was returned, indicating that the jury found that an allowance for shrinkage should be made. Apparently the jury arrived at their verdict by adding interest on $2,962.97 from November 1, 1921, when interest began to run.

The vital question is whether the quantity of wood should be determined by the scale made by Martin Kopponen at Forsman or by the scale made at the mill at International Falls. This lawsuit is the result of the inability of the parties to agree on that point.

The trouble between them first developed over a provision in the contract requiring plaintiff to furnish pulpwood not less than 3½ inches in diameter at the small end of each stick. While the work was in progress, the defendant James B. Finch agreed to accept wood 3 inches in diameter at the small end. On April 14, 1921, after the wood had been cut and piled at Forsman, Benjamin Finch, not knowing of the modification of the contract agreed upon between his brother and plaintiff, wrote to a man who represented defendants at Forsman, directing him not to accept any pulpwood under 3½ inches in diameter. He mailed a copy of the letter to plaintiff. A few days after he received it, plaintiff commenced an action to enforce a lien on all the timber he had delivered. On May 14, 1921, the parties, aided by their attorneys, made a settlement of the lien action, executing a stipulation in which they set forth the terms of the compromise agreed upon. At that time defendants had shipped a portion of the wood to the International Lumber Company. Plaintiff agreed to accept the mill's scale of this wood. It showed that he was entitled to payment for a trifle over 779 cords which had been received at the mill. He received a credit on that basis, and defendants now insist that this amounted to a practical construction of the contract by both parties and that payment for the remainder of the wood should be made on the same basis.

Plaintiff calls attention to a clause in the stipulation which reads thus:

"None of the pulpwood to be produced by said Kopponen and now on the landing is to be shipped out without due notice given said Kopponen of such loading and an opportunity for a scale thereof to be made by him or his representative, and Finch Brothers may if they so desire also scale said pulpwood as the same is loaded, but it is understood and agreed that any scale so made by the parties at the landing shall not be conclusive on them, nor is such fact considered as an admission on the part of the defendants against their contention that the mill scale alone shall be the final basis of settlement between the parties hereto as to such pulpwood, nor as an admission by said Kopponen against his contention that the quantity of such pulpwood shall be determined by a scale at the landing."

In view of this language it would be difficult to hold that the parties had agreed upon the meaning of their contract. Evidently the bone of contention when the stipulation was made was the same as it is now. Defendants insisted that a scale made at the mill should control, while plaintiff insisted that he should be paid on the basis of a scale made at Forsman. In instructing the jury, the court did not refer to the rule that when the parties, by their conduct, place a construction upon an ambiguous provision in a contract, their interpretation is entitled to great weight and may be conclusive. It is urged that the jury should have had the benefit of such an instruction, but no request for it was made and hence there is no foundation for a claim of error in this respect.

There is a clause in the contract in the following language:

"Finch Brothers or their representative to order the cars for the shipments of the above materials and to assist in securing the same so that all materials can be loaded out prior to April first, 1921, but are not to be responsible in the event cars are not furnished. * * * In the event cars are not furnished prior to above date said Kopponen agrees to load them out when cars are furnished but in any event not later than May fifteenth, 1921, and if cars are not furnished by that time the material left on the landing is to be settled for at the landing prices and loaded by Finch Brothers."

Evidently the parties anticipated that it might not be possible to get cars enough to carry all the wood to the mill before May 15. In fact that is what happened, for most of the wood was not shipped until after July 24, 1921. Plaintiff was not obliged to wait for his pay until the wood was shipped. All that remained at Forsman after May 15 was "to be settled for at the landing prices." No settlement could be made without measuring the wood. Necessarily it would have to be measured on the ground. This provision of the contract is inconsistent with defendants' claim that the wood was to be paid for on the basis of a scale made at the mill.

The letter of Benjamin Finch which provoked the log lien suit is also inconsistent with the claim. Mr. Finch wrote:

"We want to get this as accurate and as close as possible to get the scale on wood piled up as this was piled. * * * At least 50 average cords in different piles should be counted and the num-

ber of pieces of this size ascertained as it takes something like 200 to 250 pieces of this size to a cord. Then can be figured out of this amount the total number of cords and how much of this is undersized wood. * * *

"If Kopponen is not willing to accept this careful detail method of scaling, I can arrange to have the scaler of the Cornel people up there * * * and let him scale the wood."

To Kopponen he wrote:

"Unless the scale comes in detailed as I want it we will not accept it as binding upon us and then we had better have the scaling done by a competent third party whom we can get next week."

Under all the circumstances, we think it far from clear that the mill scale should control, and that the court properly submitted to the jury the dispute as to whether the scale at Forsman or the scale at the mill should determine the quantity of wood plaintiff had furnished.

It was shown that pulpwood shipped by rail settles in the cars and that there is always a difference between a measurement made when it is placed in the cars and one made when it is unloaded. All the witnesses except plaintiff agreed there should be an allowance for shrinkage. Martin Kopponen testified that he would allow 4 inches for shrinkage, or $\frac{1}{2}$ cord for each car. Benjamin Finch testified that a reasonable allowance would be from 2 to 4 inches. A mathematical computaion made by defendants' counsel shows that the jury did not make a sufficient allowance if they assumed, in accordance with the testimony of Martin Kopponen, that a shrinkage of 4 inches was the equivalent of $\frac{1}{2}$ cord for each car. But, if Mr. Finch's allowance of less than 4 inches was the basis upon which the jury estimated the shrinkage, it would seem that there was no error in their computation. It is impossible to ascertain upon what basis they made their allowance and Mr. Finch's testimony would justify them in arriving at the verdict they returned.

We reach the conclusion that defendants had no just cause to complain of the manner in which the case was submitted to the jury and that there was evidence which fairly supports the verdict.

Order affirmed.